IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Gary A.,[1]

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

Civ. No. 2:18-cv-1111-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff brings this action for judicial review of the Commissioner's decision denying his application for supplemental security income. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). On February 27, 2014, Plaintiff filed an application for benefits, alleging disability as of January 1, 2000. Tr. 13.[2] After a hearing, the administrative law judge (ALJ) determined Plaintiff was not disabled under the Social Security Act. Tr. 13-23. Plaintiff argues the ALJ erred in finding him less-than fully credible, in weighing certain medical opinions, and in rejecting lay witness testimony from Plaintiff's niece. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ determined Plaintiff had the following severe impairments: osteoarthritis of his left knee and left shoulder, and mild lumbar degenerative disk disease. Tr. 15. The ALJ concluded Plaintiff had the RFC to perform light work with the following relevant limitations: that he stand or walk for only one hour at a time and a maximum of four hours each workday; and that he can frequently reach overhead with his left upper extremity. Tr. 16. Plaintiff argues the ALJ did not capture the extent of his limitations. The Court addresses each of Plaintiff's arguments in turn.

1. **The ALJ's Adverse Credibility Finding**

Plaintiff alleged severe physical limitations. He complained of back and shoulder pain from a car accident 25 years ago. Tr. 462. Plaintiff complained of numbness in his arms down to his hands. Tr. 462. At his July 2014 physical examination, Plaintiff complained of shooting knee pain of 4/10 at rest and 8/10 while standing. Tr. 479. Plaintiff told the examiner he could walk four blocks before knee pain and shortness of breath required him to rest for five minutes.[3] Tr. 479. Plaintiff spent six hours each day "in a recliner watching television. The rest of his time is taken up with light housekeeping and yard work as well as helping his niece with her young children." Tr. 479.

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a wide range of factors in assessing credibility."

---

[3] In a function report, Plaintiff stated he could walk one block before knee pain forced him to rest. Tr. 275, 318.

*Ghanim v. Colvin*, 12-35804, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014). These factors

can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007).

The ALJ pointed to several of the above factors in finding Plaintiff less-than fully

credible as to the extent of his limitations. First, the ALJ noted "the objective medical evidence

does not support the level of impairment claimed." Tr. 17. The ALJ pointed to imaging of

Plaintiff's spine showing only mild degenerative changes. Tr. 18. During Plaintiff's July 2015

physical examination, Plaintiff did not complain of back, neck, or shoulder pain. Tr. 478.

Although Plaintiff complained of shooting pain in his knee, examination revealed minimal

findings with only a slight decrease in his range of motion. Tr. 482. Although Plaintiff walked

with a limp in his left leg, "He could rise from a chair and get on and off the examination table

without assistance." Tr. 480. One year later, despite Plaintiff's claim of back and knee pain, his

doctor commented that "Patient walks very quickly to get on the exam table and walked out of

the x-ray room[.] He does not limp or guarding [sic] whatsoever." Tr. 726. Regarding Plaintiff's

back pain, the doctor noted "no neurologic deficit. Patient [does] not behave like he is in pain."

Tr. 726. The doctor stated, "I went over a knee model with him. I said he appears to get around

so well that he probably does not need to consider total joint yet." Tr. 727. The ALJ noted that

although Plaintiff ultimately had a knee replacement in January 2017, the operation went well,

"with good results." Tr. 18.

/ / /

/ / /

4 – OPINION AND ORDER

The ALJ also pointed to evidence of drug-seeking behavior:

> In August 2016, the claimant tested positive for methamphetamine and marijuana. The claimant also violated his narcotic pain contract, and demonstrated some pain medication seeking behavior. The pattern calls into question whether the claimant is actually experiencing pain, or alleging pain to obtain narcotic pain medication. It thus undermines his symptom allegations.

Tr. 18 (internal citations omitted).

This finding is supported by substantial evidence in the record. In August 2016, Plaintiff's primary care physician noted "He denied methamphetamine use when I told him his urine was positive for meth."[4] Tr. 738. His doctor stopped prescribing narcotics after Plaintiff violated his narcotic agreement. Tr. 747. As noted above, one doctor commented that although Plaintiff complained of back and knee pain, he did "not behave like he is in pain." Tr. 726.

The ALJ contrasted Plaintiff's daily activities with his complaints of disabling pain:

> In December 2016, [one month] before his knee surgery, the claimant reported he was very active walked a lot, and worked outdoors. In testimony, the claimant admitted that, until a couple months before his knee surgery in Jan 2017, he was still mowing his lawn with a walk-behind mower. This demonstrates ability to ambulate effectively and is consistent with the residual functional capacity noted above.

Tr. 18-19 (internal citations omitted).

This finding is supported by substantial evidence in the record. *See* tr. 747 (Medical records from December 2016 noting, "He says he is very active. he walks a lot. He also works outside. He does occasionally have a 2 second sharp left chest pain.").

Finally, the ALJ discussed Plaintiff's alleged mental limitations:

> Another consideration is that the claimant's own testimony about mental health symptoms is not consistent with disability. He testified that, since cutting back on alcohol about a year ago, his anger had been less, and he was only "grouchy" in the morning until he woke up a little bit. That is normal behavior. Also, at exams, the claimant's psychological condition was repeatedly noted as normal. This is

---

[4] In January 2011, Plaintiff's physician noted, "Pt claims to have stopped meth but tested positive on 1/1/11." Tr. 392.

not consistent with his alleged severe mental health impairment. It is also noted that the claimant received very little treatment for his alleged disabling impairments without a good excuse. He admitted he had insurance coverage and full access to any care he needed through tribal medical services. His only reason for failing to engage in mental health treatment was that he did not like his counselor, and his schedule got too busy because of his knee treatment. This is not a persuasive reason for failure to engage and suggests the claimant's mental health symptoms are not as significant as he alleges.

Tr. 19 (internal citations omitted).

The record supports the above findings. At the hearing, Plaintiff testified that after cutting back on drinking alcohol, "I don't get as angry as I used to, but I still, in the mornings. I'm terrible. I, I need to start going to Lifeways again because in the mornings, I'm just [] grouchy[.]" Tr. 64. Plaintiff testified that although he gets angry at his girlfriend when she asks him to make coffee for her, he is grouchy "[j]ust until I wake up a little bit and then I'm cool. Then I apologize to her and start cleaning . . . the house, trying to help her around the house, because she got a back problem too." Tr. 66.

Plaintiff testified he went to mental health therapy "once a week for maybe a month and a half." Tr. 60. Plaintiff attended counseling "maybe a month or two before I had the knee surgery, I stopped going because I didn't like my counselor. I wanted a lady counselor, so they were going to give me a new one and I never went back for my next appointment, I just stopped going because" of physical therapy twice a week after the knee replacement. Tr. 60. The ALJ reasonably concluded that Plaintiff's unexplained failure to seek mental health treatment suggested his mental limitations were not as severe as alleged. *See Lingenfelter,* 504 F.3d at 1040 (an unexplained failure to follow a prescribed course of treatment is a valid reason supporting a finding that a Plaintiff is not fully credible as to the extent of his limitations).

The record supports the finding that—other than Plaintiff's August 2014 psychological evaluation—the medical records generally noted Plaintiff's psychological condition was normal.

*See* tr. 347 (ER record noting that other than presenting in discomfort after falling from a roof, Plaintiff was "Pleasant, cooperative"); tr. 388 (Plaintiff was "pleasant, good eye contact, interacts well with examiner and fiancé. Mood is euthymic, affect is appropriate, speech is somewhat trembly but normoproductive, not pressured. Thought content and process is normal."); tr. 391 (although Plaintiff complained of irritability, "He is alert cooperative with exam."); tr. 519 (October 2015 ER visit Plaintiff was "Alert, normal mood/affect, calm."); tr. 719, 725 ("Patient communicates appropriately, appears calm, and does not appear toxic.").

The ALJ did not err in utilizing "ordinary techniques of credibility evaluation" in weighing the validity of Plaintiff's self-reported limitations. *Ghanim*, 763 F.3d at 1163; *Lingenfelter*, 504 F.3d at 1040. Although Plaintiff argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996))). Because the ALJ provided "specific, clear and convincing reasons" for finding Plaintiff less-than credible regarding the extent of his limitations, the ALJ did not err in giving little weight to Plaintiff's testimony regarding those limitations. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Chater*, 80 F.3d 1273,1282 (9th Cir. 1996)).

## 2. The ALJ's Weighing of the Medical Opinions

Where there exists conflicting medical evidence, the ALJ is charged with determining credibility and resolving any conflicts. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial

evidence. . . ." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). One such

specific and legitimate reason to reject a treating doctor's opinion is if there is an incongruity

between it and his medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041. Generally, a

treating doctor's opinion is entitled to more weight than an examining doctor's opinion, which in

turn is entitled to more weight than a reviewing doctor's opinion. *Garrison v. Colvin*, 759 F.3d

995, 1012 (9th Cir. 2014).

Plaintiff argues the ALJ erred in giving little weight to the opinion of examining

psychologist Nora Marks, Ph.D. The ALJ summarized that examination:

> In August 2014, the claimant had a consultative psychological examination done
> by Nora Marks, Ph.D., who noted the claimant reported a history of depression
> and childhood abuse. She diagnosed posttraumatic stress disorder; depressive
> disorder, NOS; alcohol dependence; and learning disorder, NOS. She found the
> claimant was described as having a difficult time remembering things such as
> bathing and [] taking his medication. The claimant reported ongoing difficulty
> with irritability, avoidance, "exploding" for no reason, intrusive dreams,
> depression and unresolved childhood abuse. She noted the claimant had a history
> of chemical dependency and he asserted that he had cut back on alcohol usage
> considerably. The claimant reported having some severe knee problems, having
> gone through three knee surgeries so far and another one scheduled. He reported
> that he was in constant pain from arthritis in his lower back, wrists, legs, feet and
> arms, and he was unable to stand for long. Dr. Marks opined the claimant would
> have a very difficult time working because of chronic mood dyscontrol, including
> angry outbursts, as well as memory and cognitive problems; and he would likely
> be forgetful, and have poor focus and concentration. Little weight is given to this
> assessment because it is not consistent with the record, which reflects little
> mention of mental problems or treatment. It was a one-time snapshot exam that is
> insufficient to demonstrate a durational mental impairment. Also, it appears to be
> premised on misinformation about the claimant's alcohol use—shortly after the
> exam, the claimant was seen in the ER with drinking related problems and
> admitted frequent drinking.

Tr. 20 (internal citations omitted).

When weighing a medical opinion, the ALJ must consider that opinion in relation to the

record as a whole. 20 C.F.R. § 404.1527(c)(4). As outlined above, substantial evidence in the

record supports the ALJ's finding that the medical records (other than notes from Dr. Marks'

one-time psychological evaluation) generally described Plaintiff's psychological condition as normal. And as described above, the ALJ noted that despite having insurance, Plaintiff only sought mental health treatment on a handful of occasions over the course of less-than two months. These are specific and legitimate reasons supporting the ALJ's determination to give little weight to Dr. Marks' opinion.

The ALJ also concluded Dr. Marks appeared to base her opinion on "misinformation about the claimant's alcohol use[.]" Tr. 20. This too is supported by substantial evidence. Dr. Marks' reported Plaintiff "asserts that he has cut back on alcohol usage considerably." Tr. 502. A few weeks earlier, ER notes from a bike accident state Plaintiff was drinking several times each week. Tr. 489. Three weeks before Dr. Marks' examination, Plaintiff went to the emergency room "after a fall at his home. The patient reports that he had been drinking and was walking down the front 3 steps when he tripped and face planted on the concrete below." Tr. 539. As outlined above, Plaintiff later testified that after he cut back on drinking, he was less irritable, and only grouchy "[j]ust until I wake up a little bit and then I'm cool." Tr. 66.

Finally, the record supports the ALJ's conclusion that Dr. Marks' examination was insufficient to support the Act's durational requirements. The ALJ found:

> The evidence also shows the claimant was diagnosed with alcohol use disorder, learning disorder, posttraumatic stress disorder, and depressive disorder. However there is insufficient evidence showing these are durational severe impairments because the claimant sought virtually no mental health treatment. The only evidence supporting a mental diagnosis is a one-time exam that did not demonstrate a 12-month duration of impairment and appears to have been predicated on misinformation about the claimant's alcohol use. At exams, the claimant's psychological condition was consistently noted as normal. The medical expert, Kenneth Asher, Ph.D., reviewed the medical record and testified that the claimant's mental health records were very sparse, and there was not enough in his records to support a finding of mental problems for any 12-month duration. I find the claimant had no more than minimal limitations from mental impairments for any 12-month duration, and his mental impairments are thus not severe.

Tr. 16 (internal citations omitted).

9 – OPINION AND ORDER

Indeed, Dr. Asher opined, via testimony at the hearing, "Well, there's very little of a mental health or psychological nature in the, in the record." Tr. 50. Dr. Asher continued, "there's not enough of a work up to fully diagnose PTSD . . . It's just that we don't have enough, enough clinical data to fully diagnose PTSD[.]" Tr. 51. Dr. Asher testified:

> Well, the only—it's a very sparse psychiatric mental health record. We have basically, other than some notes that he's irritable, that he has anxiety and I don't see any but one that I though, [] we have one, one thorough examination, [from Dr. Marks], and so there's not a lot of information here to support in the F exhibits, not a lot of information to support the—well, even the present, not the degree or the severity of the psychiatric problems[.]

Tr. 54-55.

The ALJ did not err in giving greater weight to the opinion of Dr. Asher over that of Dr. Marks. As noted above, the ALJ gave specific and legitimate reasons for giving little weight to the opinion of Dr. Marks. The ALJ concluded the record as a whole—which contained only a handful of mental health visits and generally described Plaintiff's temperament as normal—aligned more closely to Dr. Asher's opinion.

Although Plaintiff argues another interpretation of the record is reasonable—i.e., that Dr. Marks' opinion demonstrates Plaintiff's mental limitations render him disabled—that is not a legitimate reason for overturning the ALJ's conclusions.[5] *See Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996))).

/ / /

/ / /

---

[5] The ALJ also rejected the opinions of the reviewing psychologists. Tr. 21 ("I give little weight to this assessment because it is inconsistent with the longitudinal medical record, which reflects no mental health treatment, and no durational psychological impairment."). As described above in the discussion regarding the weight given to Dr. Marks' opinion, the ALJ's conclusions here are supported by substantial evidence in the record.

3.  **Lay Witness Testimony**

Plaintiff also argues the ALJ erred in rejecting the lay witness testimony from his niece. An ALJ must provide "germane reasons" for rejecting lay testimony. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Inconsistency with other evidence in the record is a germane reason for rejecting the testimony of a lay witness. *Lewis*, 236 F.3d at 511. Further, it is not reversible error to reject lay testimony when "the lay testimony described the same limitations as [claimant's] own testimony, and the ALJ's reasons for rejecting [claimant's] testimony apply with equal force to the lay testimony." *Molina*, 674 F.3d at 1122.

To the extent Plaintiff's niece offered an opinion as to specific limitations, her opinion generally mirrored Plaintiff's own allegations. As the lay testimony generally described the same limitations alleged by Plaintiff, and as the ALJ did not err in rejecting Plaintiff's own testimony as to the extent of his limitations, the ALJ did not err in giving little weight to the lay testimony of Plaintiff's niece. *Molina*, 674 F.3d at 1122.

## CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 7th day of February, 2020.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge